**NATIONAL SURETY CORPORATION,**
Appellant,

v.

**The FIRST NATIONAL BANK OF MIDLAND, Texas, Appellee.**

No. 5914.

Court of Civil Appeals of Texas.

El Paso.

Jan. 31, 1968.

Rehearing Denied Feb. 14, 1968.

Shafer, Gilliland, Davis, Bunton & Mc-Collum and James M. O'Leary, Odessa, for appellant.

Turpin, Smith, Dyer, Hardie & Harmon and William C. Morrow, Midland, for appellee.

## OPINION

CLAYTON, Justice.

Appellant's motion for rehearing in this cause is hereby granted and the original opinion in this cause handed down on November 15, 1967 is hereby withdrawn, and the following opinion is hereby substituted therefor.

This is an appeal from a summary judgment in a suit filed by The First National Bank of Midland, Texas, appellee, against National Surety Corporation, appellant. The suit was for recovery of $1,500.00 attorney's fees paid by appellee to defend against a suit brought against it and others by one Mrs. Oatie Beavers, alleging that she was the owner and holder of six first mortgage bonds of The Crestview Baptist Church of Midland, Texas; that she had made demand upon appellee and the church for payment of the matured and accrued interest coupons on the bonds and was refused by appellee, and paying for judgment for such matured interest, plus damages in the principal amount of said bonds, and 10% additional as attorney's fees. In that suit the First National Bank of Midland filed a general denial and alleged that the bonds involved were in fact counterfeit and the signatures thereon were forgeries. The Bank subsequently filed its motion for summary judgment which was granted, and the Bank was dismissed from the suit, but paid $1,500.00 as a reasonable attorney's fee to the law firm which represented it. In the present suit it alleged that the appellant National Surety Corporation, which had issued to the Bank a Bankers Blanket Bond in which it had agreed to indemnify and hold harmless said bank from and against any losses sustained and discovered as set forth in said bond, had, although after demands, refused to pay or indemnify the Bank for the said attorney's fees. It was stipulated that appellee First National Bank had paid nothing to Mrs. Oatie Beavers as a result of her suit, but that appellee had paid the $1,500.00 attorney's fees for its defense in said cause of action.

In the present suit both appellant and appellee filed motions for summary judgment. The court sustained the motion of appellee and granted it a judgment against appellant for the $1,500.00 plus interest and costs. The basis of such judgment is not shown, but no mention was made of any forgery or counterfeiting of said bonds. Appellant National Surety Corporation filed this appeal in which, as a sole point, it charged error on the part of the court in sustaining appellee's motion for sum-

mary judgment and granting it judgment in the amount of the attorney's fees. Appellant relies on the wording of the Bankers Blanket Bond under the heading:

### "COURT COSTS AND ATTORNEYS' FEES

"(Applicable to all Insuring Clauses now or hereafter forming a part of this Bond)",

under which heading it is provided:

"The Underwriter will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured, under the terms of this bond. Such indemnity shall be in addition to the amount of this bond. In consideration of such indemnity, the Insured shall promptly give notice to the Underwriter of the institution of any such suit or legal proceeding; at the request of the Underwriter shall furnish it with copies of all pleadings and other papers therein; and at the Underwriter's election shall permit the Underwriter to conduct the defense of such suit or legal proceeding, in the Insured's name, through attorneys of the Underwriter's own selection. In the event of such election by the Underwriter, the Insured shall give all reasonable information and assistance, other than pecuniary, which the Underwriter shall deem necessary to the proper defense of such suit or legal proceeding."

Appellant then contends:

"* * * Under the foregoing provisions, as well as the other provisions in the bonds, which measure the appellant's obligations, it is only where the liability of the insured is established in fact that the bonding company is obligated for the insured's attorney's fees. Where it is not established that the insured actually sustained a 'valid and collectible loss' under the terms of the bond, appellant is not liable."

Contending that the bond is for indemnity against *loss* only, appellant then quotes from the preamble of the said bond:

"* * * NATIONAL SURETY CORPORATION * * * agrees to *indemnify and hold harmless* The First National Bank, Midland, Texas * * * from and *against any losses sustained* and discovered as hereinafter set forth." (Emphasis added).

Appellant cites us to Continental Casualty Co. v. First Nat. Bank, 116 F.2d 885, 135 A.L.R. 1141 (5th Cir., 1941), but we deem the obligation of the surety company under its bond in the cited case to the different from that in the present case. Also cited are: Fidelity & Deposit Co. of Maryland v. Reed, 150 S.W.2d 836 (Tex.Civ. App., 1941); Home Indemnity Company v. Gonzalez, 383 S.W.2d 857 (Tex.Civ.App., 1964); (n. r. e.); 9 Appleman Insurance Law and Practice, sec. 5711, p. 586. 64 Tex.Jur.2d 445, Words and Phrases, defines "Indemnity against loss" as follows:

"Indemnity against loss is distinguished from indemnity against liability in that an undertaking against loss or damage amounts to a guaranty of reimbursement on a payment by the indemnitee, whereas an undertaking against liability signifies a specific duty of protecting the indemnitee from a loss or the cause of it. 30 Tex.Jur.2d Indemnity § 11."

Appellant then quotes and relies upon insuring clause (E) of the Bankers Blanket Bond, as follows:

"(E) Any loss through the Insured's having, in good faith, and in the course of business * * * acquired, * * * received, or * * * delivered, or given any value, extended any credit or assumed any liability, on the faith of, or

otherwise acted upon any securities * * * or other written instruments which proved to have [been] counterfeited or forged * * *"

Appellant contends that clause (E) covers only a loss through the insured's having acted upon securities which *prove* to have been forged or counterfeited. Neither party to this lawsuit enlightens this court as to the basis upon which the court granted appellee's motion for summary judgment in the suit brought against it by Mrs. Beavers. Appellee's answer in that suit alleges:

"Further by way of answer, First National Bank of Midland, Texas, states that the bonds sued upon by Plaintiff are in fact counterfeit bonds, and that the signatures contained thereon are forgeries, and that Plaintiff is not entitled to recover."

But no such allegation is contained in appellee's motion for summary judgment in the Beavers case. Mrs. Beavers had charged the appellee with negligence in miscounting the bonds in validating or signing same, and negligently permitted excess bonds to be issued and negligently permitted partly validated bonds to come into the possession of or accessible to a party or parties who should not have had them; to which appellee replied in its motion for summary judgment:

"It is undisputed as to the methods and procedures followed in the stamping and signing of the bonds at The First National Bank of Midland, Texas. There is no negligence shown and an insufficient allegation of negligence in Plaintiff's petition in that Plaintiff's petition fails to state in what respect The First National Bank of Midland, Texas, acted negligently."

It is most difficult to establish from this record just what reasoning the court employed in granting the summary judgment in the Beavers case, but we feel that to be unnecessary to a decision in the present case, since we feel that there is language

in the Bankers Blanket Bond which establishes appellant's liability in the case now before us.

Appellee presents two Counter-Points. In the first it is claimed that the court did not err in granting a summary judgment because the blanket bond issued by appellant did not require that a loss be incurred by appellee before a recovery could be had of attorney's fees. The second counterpoint is as follows:

"THE PRIOR SUIT OF OATIE BEAVERS AGAINST THE FIRST NATIONAL BANK OF MIDLAND, TEXAS, ALLEGED A CAUSE OF ACTION WHICH, IF ESTABLISHED AGAINST THE INSURED, THE FIRST NATIONAL BANK OF MIDLAND, WOULD HAVE CONSTITUTED A VALID AND COLLECTIBLE LOSS SUSTAINED BY THE INSURED UNDER THE TERMS OF THE BANKERS BLANKET BONDS ISSUED BY THE APPELLANT."

The "Court Costs and Attorneys' Fees" provision of the Blanket Bond has heretofore been quoted in this opinion. Attention is called to the language:

"The Underwriter will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or *alleged liability* on account of any loss, claim or damage *which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this bond.* Such indemnity shall be in addition to the amount of this bond." (Emphasis supplied).

This brings us to a determination of whether the liability of the appellee alleged by Mrs. Beavers would, if established against the appellee (as the Insured) constitute a valid and collectible loss sustained by appellee under the terms of the bond. The

word "property" is defined in the bond as meaning:

### "DEFINITION OF PROPERTY

"Wherever used in this bond Property shall be deemed to mean money, currency, coin, bank notes, Federal Reserve notes, postage and revenue stamps, U. S. Savings Stamps, bullion, precious metals of all kinds and in any form and articles made therefrom, jewelry, watches, necklaces, bracelets, gems, precious and semi-precious stones, *bonds, securities,* evidences of debts, debentures, scrip, certificates, receipts, warrants, rights, transfers, coupons, drafts, bills of exchange, acceptances, notes, checks, withdrawal orders, money orders, travelers' letters of credit, bills of lading, abstracts of title, insurance policies, deeds, mortgages upon real estate and/or upon chattels and upon interests therein, and assignments of such policies, mortgages and instruments, and other valuable papers and documents, and all other instruments similar to or in the nature of the foregoing, in which the Insured has an interest or which are held by the Insured for any purpose or in any capacity and whether so held gratuitously or not and whether or not the Insured is liable therefor, and chattels which are not hereinbefore enumerated and for which the Insured is legally liable." (Emphasis supplied).

Had Mrs. Beavers established against appellee her allegations that appellee, as one of the defendants in her suit, did:

" * * * negligently mis-count said bonds in validating or signing same, and did negligently permit excess bonds to be issued, and did negligently allow partly validated bonds to come into the possession of a party who should not have had their possession, and did negligently permit said bonds to be accessible to parties other than the officers of said bank, or the officers of said church entitled to possession of same, and did, upon receipt of said bonds from R. B. Cousins, Defendant, negligently fail to check or count the number of same and to prevent excess bonds from being distributed; that each act or omission herein alleged to be negligence was a proximate cause of the acceptance by Plaintiff, an innocent victim, of the bonds in question and the consequent damages to her",

it would have constituted a valid and collectible loss sustained by Insured under the terms of the bond and would place the coverage for attorneys' fees directly within the provisions for attorney's fees incurred.

There is no allegation or proof by the appellant that the appellee did not comply with the requirements included in the "Court Costs and Attorneys' Fees" clause, and apparently the appellant made no attempt to exercise its option to defend the appellee in the suit filed against it by Mrs. Beavers in which case it would be liable under the terms of this provision for its attorney's fees in defending the suit. This option apparently not having been exercised by appellant, the appellee then defended the suit and received a summary judgment therein, thus saving the appellant from any loss under the alleged cause of action and, therefore, should be reimbursed the attorney's fees expended in this undertaking.

We therefore overrule appellant's sole point of error and affirm the judgment of the trial court in rendering judgment for attorney's fees, interest and costs against appellant.